

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case



**RECEIVED**

12/23/2024

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

for the

Northern District of Illinois ▾

_____CIVL_____ Division

| | |
|---|---|
| Feras Hindi, Samiha Ayyash, Sevem Alhindi | )    Case No. _____ |
| | )      *(to be filled in by the Clerk's Office)* |
| | ) |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | )    Jury Trial: *(check one)* ☑ Yes ☐ No |
| **-v-** | )    **1:24-cv-13183** |
| Ahmad Alhindi, Touleen Alhindi, Amani Alhindi, Nancy Alhindi | )    **Judge John Robert Blakey** |
| | )    **Magistrate Judge Beth W. Jantz** |
| | )    **Random/CAT. 2** |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) |

## COMPLAINT FOR A CIVIL CASE

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Feras Hindi |
| Street Address | 7823 New London Dr, |
| City and County | Springfield Fairfax |
| State and Zip Code | VA 22153 |
| Telephone Number | 703-980-6955 |
| E-mail Address | fhindi@friendshiplogistics.com |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

| | |
|---|---|
| Name | Ahmad Alhindi |
| Job or Title *(if known)* | |
| Street Address | 7345 Tiffany Dr. APt 2W |
| City and County | Orland Park, Cook County |
| State and Zip Code | IL 60462 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Touleen Alhindi |
| Job or Title *(if known)* | |
| Street Address | 729 W 16TH ST |
| City and County | Chicago Cook County |
| State and Zip Code | IL 60616 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | Amani Alhindi |
| Job or Title *(if known)* | |
| Street Address | 1904 Tamahawk LN |
| City and County | Naperville Will County |
| State and Zip Code | IL 60564 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | Nancy Alhindi |
| Job or Title *(if known)* | |
| Street Address | IBN Al AKouli House 8 |
| City and County | Rayan Jubeha |
| State and Zip Code | Amman Jordan |
| Telephone Number | |
| E-mail Address *(if known)* | |

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[ ] Federal question   [✔] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

    a. If the plaintiff is an individual

    The plaintiff, *(name)* Feras Hindi , is a citizen of the State of *(name)* Virginia .

    b. If the plaintiff is a corporation

    The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

    a. If the defendant is an individual

    The defendant, *(name)* Ahamad Alhindi , is a citizen of the State of *(name)* Illinois . Or is a citizen of *(foreign nation)* _____.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

b. If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

Samiha, Feras, and Sevem each suffered damages exceeding $75,000. Samiha incurred financial losses from withheld inheritance and legal expenses, along with severe emotional distress. Feras faced economic harm from covering estate expenses and legal costs, as well as emotional distress caused by Defendants' actions and interference. Sevem experienced financial losses from investigative costs and emotional harm due to delays lack of closure.

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

This case concerns the December 13, 2022, death of Captain Mohannad Alhindi and allegations of fraud, negligence, and concealment by the Defendants—his wife, daughter, and brother-in-law. The Plaintiffs, including the Captain's mother and siblings, claim the Defendants' actions caused emotional, financial, and legal harm through misrepresentation, interference with inheritance, and concealment of critical details surrounding his death.See Attachments. 3

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

SEE attachment 5

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.  For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  12/12/2024

Signature of Plaintiff

Printed Name of Plaintiff  Feras Hindi

### B.  For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

Feras Hindi ,Samiha Ayyash,

Sevem Alhindi

Pro Se

7823 New London Dr, Springfield, VA 22153

(703)980-6955

AyyashSamiha@gmail.com

## United States District Court Northern District of Illinois

## COMPLAINT FOR A CIVIL CASE

## Attachments

**Feras Hindi,Sevem Alhindi,**

**Samiha Ayyash,**                                        **Case :**

Plaintiffs                                               Jury Trial : Yes

VS

**Ahmad Alhindi, Touleen Alhindi**

**Amani Alhindi , Nancy Alhindi**

**Defendants**

**ATTACHMENT 1**

**I. The Parties to This Complaint A.**

The Plaintiff(s) Provide the information below for each plaintiff named in the complaint.

Attach additional pages if needed.

**Plaintiff 2**

1. Samiha Ayyash  ( VA STATE )

   Address: 7823 New London Dr, Springfield, VA 22153

2. Relationship: Mother, heir, beneficiary, and dependent of Mohannad Alhindi

**Plaintiff 3**

3. Sevem Alhindi ( CA STATE )

   Address: 616 S Catalina Ave #233 Redondo Beach CA 90277

   Relationship: Sevem Alhindi Sister  of Captain Mohannad Alhindi.

**B. If the Basis for Jurisdiction Is Diversity of Citizenship**

2.  -   The Defendant(2)  Touleen Alhindi , is a citizen of the State of Illinois

   -   The Defendant (3) Amani Hindi, is a citizen of the State of Illinois.

   -   The Defendant (4) Nancy Alhindi is an American Citizen  of Jordan lives in

      Amman Jordan with ties to the States of IL

**ATTACHMENT 3**

**Claims Table**

**A.** Misrepresentation of The Captain Medical History while unconscious in ER (5:00 PM Naperville, ILTime) **Page** 11-17

**B.** False Representation to Plaintiff 1 (Feras) Of Medical condition of captain and Location ( U.S.A Events ) **Page** 17-22

**C.** Fraudulent concealment of Location and Critical status of the Captain ( around 8:30 PM Naperville IL December 13 2022 ) **Page** 23-27

**D.** The Consent for Percutaneous coronary intervention (PCI) **Page** 28- 30

**E.** Post-Consent Fraudulent Concealment (10:30 PM – 1:30 AM, December 14, 2022, Naperville, IL Time) **Page** 31-32

**F.** Concealment and false Representation of Hospital Records protecting a criminal Act December 16 2022 **Page** 33-43

**G.** Delay of Issuance of Death Certificate **Page** 44-55

2. **Attachment 4** : Claims **Page** 56-70

3. **Attachment 5** : Prayer of Relief **70**

**ATTACHMENT 3**

1. **Background**

2. The deceased, Captain Mohannad Alhindi, a 63-year-old senior pilot for Gulf Airline (The Employer ), U.S & Bahrain resident, property owner in Illinois, and a taxpayer for over 10 years, died on duty in Dhaka, Bangladesh, at 12:00 AM Illinois time, on December 14, 2022

3. The Bangladesh Death Certificate list the cause of death as a 99% blockage in his left coronary artery.

4. Plaintiff 1 Feras, the deceased's brother, a U.S Citizen resides in Virginia.

5. Plaintiff 2 Samiha, the mother of Captain Mohannad Alhindi (referred to as "the Captain" or "deceased")

6. Plaintiff 3 Sevem, the deceased's sister, resides in California.

7. Defendant 1, Ahmad Alhindi, is Amani and Nancy's brother, .A U.S Citizen, lives in Oakland Park, IL

8. Defendant 2, Touleen, is the deceased's daughter, a U.S Citizen and lives in Chicago, IL.

9. Defendant 3 Amani, the wife of the deceased Captain, and in Arab culture, it is common for first cousins to marry. Amani and the Captain were first cousins. Amani the sister of Nancy and Ahmad. Amani is the mother of Touleen .A U.S Citizen resides in Naperville, IL.

10. Defendant 4, Nancy, is Amani and Ahmad's sister, and Touleen's aunt. A U.S Citizen and lives in Jordan with ties to Illinois, including financial engagements.

**ATTACHMENT 3**

11. **Statement Of Facts**

12. On December 13, 2022, at 3:50 PM Naperville time, Captain Mohannad Alhindi fell unconscious while at Dhaka Airport, Bangladesh. His employer, the airline, transported him to United Hospital in Dhaka for emergency treatment.

13. The 63-year-old Captain had a known history of hypertension, prior hospitalizations (including one instance with the same exact scenario of falling unconscious), was a smoker, and, according to the death certificate, he had asthma

14. The Captain suffered a total of **four heart attacks** during the following times:

    A. **3:50 PM** at the airport,

    B. **4:30 AM** Arrived hospital

    C. **6:00 PM** at the UCU,

    D. **6:50 PM** in the ICU,

    E. **11:00 PM Naperville time** during **PCI** (Percutaneous Coronary Intervention) as soon as he was moved to the table.

16. After the death on December 14 2022 the Plaintiffs started formal investigation through a licensed investigation company.

17. The Plaintiff's Investigation was concluded in September 2023 revealing devastating facts how the Captain risked his life, and others by flying unfit.

18. Revealed Defendant 3 (Amani), the Employer and the hospital's Liability in the death

**ATTACHMENT 3**

19. The investigation revealed how money can drive a wife and a daughter to breach their duties to their dad " The Captain", while injuring others and risking the public.

20. The Captain's siblings and mother realizing that the Captain died due to negligence and malpractice, initiated criminal claims against the hospital and the employer airlines in Bangladesh

21. Court concluded investigation and evidence from the employer, hospital and witnesses were presented to the court revealing documented details from the minute the Captain fell at the airport, up until November 2023

22. Investigation revealed with evidence how the Defendants conspired and committed the alleged fraud and negligence for two reasons

    A. Concealing the unfitness of the Captain that was known by all three the Captain, Defendant 4 and the employer . Expert will testify and confirm 99% Blockage takes years to build up and disqualify you from flying

    B. Concealing any negligence by Defendant 4 from the moment Captain was at ER by concealing his medical history from the Airlines "employer"

    C. Concealing the fact that the Airlines allowed an unfit Pilot to fly innocent lives over innocent people due to their failure in Adhering to ICO, DOT and FAA regulations.

    D. Concealing the Hospital's negligence of not having a specialist to diagnose the Captain delaying his treatment that led to his death.

**ATTACHMENT 3**

    E. Concealing the negligence of the Defendant 4 Amani and the Airlines employer of not making sure the Captain is receiving good care

    F. Concealing all the above from the American Federal governments ( DOT & FAA) , from the Plaintiffs, from the Police, from the courts and from the Public

23. The motives for all of the above combined them into committing crimes and violations against the Plaintiffs and the Public are summed in

    A. The Airlines "Gulf Air" was going through Audit for approvals to fly to the USA

    B. Defendants 2 (Touleen) and Defendant 3 (Amani) wanted the retirement and life policies without any issues or investigation that can delay or void these insurance policies,

    C. The hospital had too many negligence and malpractice deaths on their records, they couldn't afford reputational and licensing use one more, specially a foreign Captain

24. It was in the best interest of everyone, mainly the Defendants for the death of the Captain negligence to be concealed.

25. The Plaintiffs needed closure to know what happened to their son, they want Justice to who participated in this negligence yet they are not in the business of risking the public lives by concealing their own son and brother, the Captain's part of this negligence

**ATTACHMENT 3**

26. Defendant 3 (Amani) knew of the Captain's deteriorating health, but rather than revealing it and fixing it, she pushed the Captain to ignore it, in order to finish paying for the house mortgage in Naperville, IL

27. Defendants didn't think that Plaintiff Samiha deserves her inheritance from her son.

28. Defendants didn't know that the Captain was committed to monthly payments for the Plaintiff Samiha and her caregiver.

29. Defendants did not know that the Captain has told the Plaintiffs of his financial investments

30. Defendants concealed the hospital records and publicly false represented all the facts in order to stop any investigation into the death

31. Defendant 2 (Touleen) called the Hospital and instructed them not to release any CCTV and medical records to the Plaintiffs

32. Plaintiffs lost the chances of holding the Airline and the hospital in Bangladesh Liable

33. Defendants Amani, Touleen, Nancy, the hospital and the airline, submitted a false hospital record to the Plaintiffs with a Professor name as the treating doctor of the Captain's case in the United Hospital. Dr. Omar Farouk.

34. The Plaintiffs filed a criminal case against Professor Dr. Omar for malpractice.

35. Six months later into the criminal case against Omar Farouk, it was revealed that Dr Omar wasn't even at the Hospital

**ATTACHMENT 3**

36. Court also revealed that the Captain was misdiagnosed the first hour due to the concealment of medical history by Defendant 3 (Amani) and the negligence of the Airline of not having these records.

37. The Defendants kept lying to the Plaintiffs and to the Public that the Captain received the best care in the hospital and the airline took good care of the Captain and he was 100% healthy

38. The court revealed that the Captain was left without medical care and a doctor from 7:30-9:15 am.

39. The Defendant 2 (Touleen), Defendant 3 (Amani), Defendant 4 (Nancy) made a deal along with the deceased's employer, Gulf Air, leveraging their governmental influence into interfering in the mother's share, in her inheritance causing her damages, profiting from her share of the estates by conspiring to outcast her from insurance policies and claims.

40. The Airlines had shortage of Pilots especially seniors after Covid-19 and the Captain and Defendant 3 (Amani) and Defendant 2 (Touleen) are dependent on the Captain.

41. The employer airline and the United hospital share responsibility as well.

42. We are asking the court respectfully for the punishment and the damages only for the part the Defendants are liable for.

43. Due to Jurisdictions implications, Plaintiffs can't combine the employer and the hospital in one casse or they would.

**ATTACHMENT 3**

44. Bangladesh, Jordan, and Bahrain have faced significant challenges in terms of governance, including concerns about corruption and human rights practices.

45. These countries have been criticized by various international organizations for their record on public safety, the rule of law, and respect for human rights

**ATTACHMENT 3**

17. **NEGLIGENCE & BREACH OF DUTIES (1)**

18. **FRAUD (1)**

19. **Fraudulent Misrepresentation**

    A. **Misrepresentation of The Captain Medical History while unconscious in ER (5:00 PM Naperville, ILTime)**

20. **Duty**

21. The Captain, having suffered severe medical deterioration at the airport, was admitted unconscious to the emergency room at United Hospital in Dhaka, Bangladesh.

22. Co-Pilot Khalil, unaware of the Captain's medical history, was prompted by Dr. Shafiqul Islam ER Doctor to provide this information, leading to a call being made to Defendant 3 (Amani), the Captain's next of kin.

23. Due to the Captain's critical condition and the hospital's inability to access his medical records, Defendant 3 (Amani) was contacted as the primary and sole source of vital medical information, given the Captain's unconscious state and the hospital's inability to verify his full medical history.

24. At the time of the incident, Defendant 3 (Amani) was in a fiduciary and confidential relationship with the Captain, having managed his medical treatment and medications for decades.

25. This relationship imposed a duty on Defendant 3 (Amani) to act in the Captain's best interests and to disclose all material facts regarding his health. As the Captain's legal spouse and designated emergency contact

26. Defendant 3 (Amani) owed a heightened duty to act in his best interests by providing truthful and accurate medical information to the professionals during a critical emergency.

27. Defendant 3 (Amani)'s role as the Captain's spouse and next of kin further heightened her duty to ensure that accurate and truthful information regarding the Captain's medical history was communicated to the medical professionals.

28. This duty included acting in the Captain's best interests, a responsibility that is both a fiduciary obligation and a fundamental aspect of the duty of care in such situations.

29. At approximately 5:00 PM on December 13, 2022, Defendant 3 (Amani) received a call on her cell phone (708-541-8606) from Gulf Air's Incident Occurrence Center (IOC) in Bahrain, at her joint residence in Naperville, Illinois. (Name of IOC Operator is unknown to the Plaintiffs)

30. During the call, Defendant 3 (Amani) verbally misrepresented the Captain's medical history and his current health, including his prior hospitalization for cardiac issues, despite being fully aware of his health conditions.

31. Defendant 3 (Amani) falsely stated that the Captain had no prior cardiac issues, no allergies, no medical conditions, and that he was not taking any medications

32. Defendant 3 (Amani) had direct and intimate knowledge of the Captain's high-profile medical history, including a 2004 cardiac event which required multiple hospitalizations in Bahrain.

33. Defendant 3 (Amani) was fully aware of the Captain's hypertension, prescription for blood thinners, ongoing use of an inhaler for breath shortness and health deterioration.

34. Over the course of decades, Defendant 3 (Amani) played an active main role in managing the Captain's medical treatment and medications, ensuring that he adhered to his prescribed regimen.

35. Despite being fully aware of the Captain's medical history, Defendant 3 (Amani) deliberately misrepresented and withheld crucial information during the urgent call to Gulf Air's Incident Occurrence Center.

36. This deliberate omission of critical details prevented a more thorough cardiovascular evaluation and timely treatment, compromising the Captain's health and safety.

37. This misrepresentation was not an accidental omission but a deliberate action driven by Defendant 3 (Amani)'s financial motivations and desire to prevent the Captain from being grounded due to his health issues. The Captain had previously been suspended because of his cardiac condition, in addition to reduced pay during the COVID-19 pandemic.

38. Defendant 3 (Amani)'s deliberate misrepresentation to Gulf Air's Incident Occurrence Center was motivated by the desire to avoid any exposure of the Captain's health risks, which could have led to early retirement or termination of employment.

39. By concealing the truth, she knowingly compromised the medical evaluation and treatment necessary to address the Captain's true health condition, leading to direct harm.

40. Given the Captain's unconscious state and the hospital's inability to immediately verify his full medical history, the medical professionals, including the Co-Pilot, had limited means to fully assess the Captain's health status.

41. In the absence of accessible medical records or direct family contact, they were reliant on Defendant 3 (Amani)s disclosures to inform their treatment decisions, with Amani being the sole available source of this critical information at that time.

42. Defendant 3 (Amani)'s deliberate misrepresentation of the Captain's critical medical history during the emergency was a material factor in his misdiagnosis, delayed treatment, and further medical deterioration.

43. Despite not being directly responsible for the Captain's death, Defendant 3 (Amani)'s false statements substantially prevented timely cardiovascular intervention, exacerbating the Captain's condition and ultimately leading to his death.

44. Defendant 3 (Amani) failure to accurately disclose the Captain's medical history, including his prior cardiac issues, hypertension, and other health conditions, delayed the proper diagnosis and treatment of his condition.

45. The medical team, relying on Defendant 3 (Amani) This delay worsened his medical state, which could have been mitigated with timely and accurate care. Defendant 3 (Amani)s misrepresentation was one of several contributing causes

of harm, and her failure to disclose known medical history during the critical emergency directly contributed to the delay in appropriate cardiovascular care

46. Defendant 3 (Amani)'s false statement, focused on head CT scans rather than conducting a necessary cardiovascular evaluation during the critical golden hour.

47. This delay in diagnosing the Captain's cardiac condition caused a significant worsening of his health. While the focus was placed on ruling out head injury, the Captain's oxygen levels dropped dramatically, necessitating immediate transfer to the ER where he was intubated and moved to the ICU.

48. This failure to prioritize cardiovascular care led to two additional heart attacks at 6:00 PM and 6:45 PM, further compromising his health. These heart attacks, caused by the lack of timely intervention, ultimately required ventilator support and directly contributed to his death.

49. Had Defendant 3 (Amani) disclosed the Captain's true medical history, timely and appropriate cardiovascular care could have been administered, potentially saving his life.

50. By failing to disclose the Captain's true medical history, including his prior cardiac issues, hypertension, and other health conditions, Amani breached her fiduciary duty and her duty of care.

51. Defendant 3 (Amani) knowingly provided false information to the medical professionals driven by financial motivations and a desire to prevent the Captain from being grounded due to his health issues.

52. Defendant 3 (Amani)'s deliberate omission of critical medical information led to a misdirection of medical care, resulting in delays in cardiovascular evaluation and

treatment. This delay caused significant harm to the Captain, including further heart attacks and his eventual death.

53. Her failure to provide accurate information was a clear violation of her fiduciary and medical duties, foreseeably harming the Captain and causing irreparable damage to both him and his beneficiaries, particularly Plaintiff 2 (Samiha)

54. Defendant 3 (Amani), as a fiduciary, had a duty to act in the best interests of Samiha, particularly as a beneficiary of the Captain's estate.

55. Defendant 3 (Amani) breached this duty to Samiha by withholding the Captain's medical records and failing to notify Samiha or her representatives about the emergency situation.

56. Defendant 3 (Amani)'s false statements and failure to act in a timely manner directly led to a delay in the Captain receiving critical medical treatment, causing his condition to deteriorate and ultimately resulting in his death.

57. This breach caused significant emotional distress and financial harm to Samiha, including a potential reduction in the estate's value, loss of financial support, and increased financial burdens.

58. Defendant 3 (Amani)s actions directly contributed to financial harm by increasing estate-related expenses, including travel costs, funeral expenses, and emergency logistics. These additional costs reduced the value of the Captain's estate, diminishing the inheritance of Plaintiff Samiha and Plaintiffs Feras and Sevem.

**ATTACHMENT 3**

59. **NEGLIGENCE & BREACH OF DUTIES (2)**

60. **FRAUD (2)**

61. **Fraudulent Misrepresentation**

**B. False Representation to Plaintiff 1 (Feras) Of Medical condition of captain and Location ( U.S.A Events )**

62. Defendant 3 (Amani) made a false statement of material fact and possessed specialized knowledge of information that was not otherwise available to the plaintiffs

63. On December 13, 2022, at approximately 8:12 PM Naperville time, Defendant 3 (Amani) called Plaintiff 1 (Feras) at his home in Springfield, VA, from her personal cell phone (708-541-8606). Defendant 3 (Amani) falsely informed Feras that the Captain was hospitalized in Lahore, Pakistan, while she knew that the Captain was actually in critical condition in Dhaka, Bangladesh.

64. Feras asked Defendant 3 (Amani) what was wrong with him, Defendant 3 (Amani) falsely and verbally stated in Arabic, which translates to " I don't know any details of what happened to him" confirming falsely she had no knowledge of his medical condition.

65. This intentional misrepresentation was made while Defendant 3 (Amani) knew the Captain was in Dhaka, Bangladesh, in United hospital and his exact critical situation. Defendant 4 Amani intentionally misled Feras to believe he was in Lahore, Pakistan

66. Defendant 3 (Amani) was aware of the full accurate details of his location and unconscious situation from the airline from 5:00 PM when the IOC called her on her Cell Phone asking for medical history.

67. Defendant 3 (Amani) at 7:50 Defendant became of knowledge of his critical situation including the bed number in the ICU where he was moved to.

68. Defendant 3 (Amani) had prior knowledge of the Captain's health, frequent trips to Dhaka and his exact location. The Captain communicated with her regarding the World Cup while from Radisson Hotel before he left for the Airport in Dhaka.

69. Defendant 3 (Amani) personally and from her phone, was in constant communication with the Co-Pilot and had access to updates while he was in Dhaka,

70. Defendant 3 (Amani) has The Captain Iphone on her phone locator.

71. Defendant 3 (Amani) intended to delay Plaintiff 1 (Feras) from obtaining critical medical information or interfere in making timely decisions regarding his brother's care, in order for her to control and limit the information and decisions.

72. Defendant 3 (Amani) gave Plaintiff 1 (Feras) a phone number to the CoPilot who wasn't answering or authorized to speak to Plaintiff 1 (Feras) as Amani was acting the next of Kin, and the airline asked him to specifically speak to Defendant 3 (Amani)

73. Plaintiff 1 (Feras) not knowing that his brother" the Captain" is in a coma at this point supported by a ventilator

74. Plaintiff 1 (Feras) right away called the deceased phone twice when he hung up with her and again at 8:22 PM

75. Plaintiff 1 (Feras) Left voice and written messages to the Co Pilot on his What's app (+97333391333 ) on the number have been provided by Amani  at 8:14 PM, 8:23 PM, 8:25PM, 8:31PM, 9:04 PM, 9:09 PM, 9:11PM.  No reply or answer

76. Plaintiff 1 (Feras) again called the CO pilot at 8:22 PM  who didn't answer.

77. Feras tried calling the Co Pilot again ( (3 times ) at 8:28 no answer pleading for any response.

78.  At 8:30 PM Plaintiff 1 (Feras) in desperation believing Defendant 3 (Amani) didn't know anything, called his brother's phone again with no answer

79. Plaintiff 1 (Feras) looked up the employer Gulf Air Airlines' published numbers, called them , and when finally he got through,  the airline stated the Captain was in Dhaka Bangladesh at United hospital and that they don't have the hospital information or phone number or any status on the pilot.

80. Plaintiff 1 (Feras) looked on line for United Hospital who, when he called them, didn't know which department the captain was in, and kept transferring to no answer phone as it was between shift change 8:00-9:00 am Bangladesh time .

81. Plaintiff 1 (Feras) made it clear to Defendant 3 (Amani) that he's unable to get through or find any information asking her to update him.

82. At 10:00 PM the Co Pilot messaged Plaintiff 1 (Feras) back, giving him the number of the hospital, telling Plaintiff 1 (Feras) to call them.

83. Plaintiff 1 (Feras) again called the number provided, and there was no answer

84. Plaintiff 1 (Feras) finally got through to the hospital, they told him they would find out and call him back, but she didn't.

85. Defendant 3 (Amani)'s actions were intended to maintain control over the situation and avoid family interference. Defendant 3 (Amani) deliberately denied the truth and made false claims with full knowledge of their falsity and the intent to deceive.

86. Defendant 3 (Amani)'s goal, in conjunction with Defendants 2 (Touleen) and 1 (Ahmad), was to mislead Feras into believing that the Captain was in Lahore, thereby wasting his time and preventing him from interfering in medical or financial decisions.

87. Defendant 3 (Amani)'s false claims included telling that her brother "Yazan" , who lives in Jordan, was on his way to Dhaka, all of which were lies designed to keep Plaintiffs from taking action. Given the family's limited access to information and Amani's superior knowledge, Feras had no choice but to rely on her statements, leaving him without the facts needed to make informed decisions in a timely manner.

88. The evidence reveals that Defendant 3 (Amani) was aware that someone had to travel to Bangladesh and was actively working to get there before the Captain's family could. Defendant 3 (Amani) attempted to get the CoPilot to buy her a ticket and, when he ignored her, Defendant 3 (Amani) purchased a one-way ticket during the time Plaintiff 1 (Feras) was still trying to find out where his brother "the Captain" was.

89. This premeditated plan and concrete actions demonstrate Amani's intent to deceive and maintain control over the situation, preventing Plaintiff 1 (Feras) and other family members from taking necessary actions.

90. By presenting this false narrative, Defendant 3 (Amani) aimed to deceive Plaintiff 1 (Feras) into making decisions based on incomplete and inaccurate information, which she knew to be false.

91. The representation is a fact within Defendant 3 (Amani)'s knowledge, the misrepresentation didn't contain improbable facts that would have created doubts about the truth of Defendant 3 (Amani) Statement that she didn't know what was wrong with him or his location

92. Feras' reliance on Defendant 3 (Amani)'s statements appears reasonable and justifiable based on the context provided. He had no other reliable source of information, and the false statements made by Defendant 3 (Amani) were designed to deceive him into believing his brother was in Lahore, when in fact, he was in critical condition in Dhaka.

93. Given the urgency of the situation and the familial relationship between Plaintiff 1 (Feras) and Defendant 3 (Amani), it is reasonable for Plaintiff 1 (Feras) to rely on her information.

94. The delay in Plaintiff 1 (Feras)'s ability to take immediate action regarding his brother (the Captain)'s medical care resulted in significant harm. This was due to missed opportunities for medical intervention that could have mitigated the Captain's deteriorating health.

95. From 8:00 PM that day until a few months later, Feras was misled by Defendant 3 (Amani)'s false statement that she didn't know what was wrong with the Captain. Only months later, Feras learned that Amani had only contacted him after the Captain reached an irreversible medical stage, aiming to relieve herself

of responsibility for consenting to any procedures and to cover up for her own negligence.

96. Between 7:30 PM and 10:30 PM, the Captain was left without any care, exacerbating the deterioration of his condition.

97. Had Defendant 1 (Ahmad), Defendant 2 (Touleen), and Defendant 3 (Amani) disclosed the Captain's true medical condition and location earlier, Feras would have been able to take immediate action, seek alternative medical care, and potentially prevent further deterioration in the Captain's health.

98. Medical experts and documented studies will confirm that timely intervention is crucial in such cases. The delay caused by Defendant 3 (Amani)'s misrepresentations deprived Feras of the opportunity to intervene and alter the Captain's medical outcome.

99. Feras could have contacted family members or employers to verify the facts, reached out to medical professionals or hospitals for accurate information, or even contacted emergency services for guidance on the Captain's condition.

100. Given that the Captain is a taxpayer, Plaintiff 1 (Feras) could have sought medical advice or approached the American embassy for assistance. The delay caused by Defendant 3 (Amani)'s false information not only wasted precious time but also directly prevented Feras from taking the timely and appropriate actions that could have altered the Captain's medical condition.

101. Feras assigned his wife to find him a ticket to Bangladesh which is around 20 hours flight.

**ATTACHMENT 3**

102. **<u>NEGLIGENCE & BREACH OF DUTIES (3)</u>**

103. **<u>FRAUD (3)</u>**

104. **<u>Fraudulent Concealment</u>**

    **C. Fraudulent concealment of Location and Critical status of the Captain ( around 8:30 PM Naperville IL December 13 2022 )**

105. **The defendants concealed a material fact & Failed to Disclose**

106. Defendant 3 (Amani), Defendant 2 (Touleen) and Defendant 1 (Ahmad) who was with Defendant 3 (Amani) at her house in Naperville when she called Plaintiff Feras at 8:12 PM from her cell phone giving him false misrepresented information and concealing critical material facts on the initial call, and on following up seeking information, including:

    A. The Captain's actual location in Dhaka, Bangladesh.

    B. The Hospital name, address and that Captain is at the ICU

    C. His critical medical condition, including his incapacitation and on ventilator support.

    D. The fact that he had suffered three heart attacks total

    E. That she knew he was in ER since 5:00 PM, and in the ICU since 7:50PM

    F. That the Airline IOC called her at 5:00 asking for the medical history

    G. The fact that she concealed his medical history

    H. The fact that from 5:00pm - 8:00pm she didn't ask about the doctors, or the causes of his situation, or the plan of treatment

107.    Defendant 1 (Ahmad) and Defendant 2 (Touleen) and Defendant 3 (Amani) knew they were concealing these facts from Feras

108.    Defendant 2 (Touleen) knew the exact location of her father (The Captain) but failed to inform Plaintiff 1 (Feras), despite being aware of her mother's misrepresentations. This omission constitutes a form of misrepresentation, as it led to Plaintiff 1 (Feras) being misled about the Captain's whereabouts

109.    Most of these facts Plaintiff 1 (Feras) discovered months later, through investigation and court evidence where he felt and still is feeling deceived .

110.     Plaintiff 1 (Feras) didn't even know where the Captain was. Feras didn't know that his brother's health had been deteriorating all these years.

111.     Not at any point Defendant 3 (Amani) notified Feras the truth or updated Feras. Defendant 2 (Touleen) and Defendant 1 ( Ahmad) were present.

112.    Defendant 3 (Amani), Defendant 1 (Ahmad) and Defendant 2 (Touleen) had a fiduciary duty to fully disclose the Captain's critical condition, including his ICU status and need for urgent care, which was essential for Feras to make informed decisions about his medical care.

113.     As the primary family members involved, they had superior knowledge about the Captain's condition. Withholding this information from Feras, especially in such a critical situation, was a breach of their duty to inform him fully.

114.    Amani's partial and misleading disclosure about the Captain's condition, along with Ahmad and Touleen's silence, misled Feras and delayed his ability to act. This deceptive conduct directly hindered timely medical intervention.

115.    Defendant 3 (Amani)'s omissions and Ahmad and Touleen's failure to provide full details about the Captain's health were deceptive, leaving Feras unaware of the urgency of the situation.

116.    Withholding this critical information foreseeably led to harm. Had Feras been fully informed, he could have ensured proper care, potentially preventing the Captain's further deterioration or death.

117.    The Defendant 3 (Amani) didn't want Feras to know material facts on time so he doesn't interfere in the medical decisions or for the family to fly to Bangladesh before she gets there.

118.    Defendant 3 (Amani), Defendant 2 (Touleen) and Defendant 1 (Ahmad) were remained silent when Amani was committing the concealment Fraud on Feras, despite the urgency of Situation

119.    Plaintiff 1 (Feras) was misled by Defendant 4 (Amani)'s partial deceptive disclosure. Feras was misled by Defendant 2 (Touleen) and Defendant 1 (Ahmad)'s Silence.

120.    **BREACH**

121.    Defendant 3 (Amani), Defendant 1 (Ahmad) and Defendant 2 (Touleen) since 5:00 PM, they had a chance to check the hospital reviews and check the name of the doctor, what was the cause of his incident and what is the medical plan, from 5:00 pm they had that option. They didn't

122.    It was Defendant 3 (Amani) duty to make sure the Captain is receiving good care and to make sure that the employer she is entrusting is doing what is

providing the best care to the Captain especially in countries like Bangladesh or Pakistan as she is falsely represented.

123.  Defendants Amani, Touleen, and Ahmad breached their fiduciary duties and duties of care by failing to ensure the Captain received proper medical care from 5:00 PM to 10:30 PM.  Defendant 3 (Amani)'s fraudulent concealment of critical facts, including the Captain's true condition and location, misled Feras and delayed his intervention.

124.  This conduct was a clear breach of their fiduciary duty to act with utmost loyalty and good faith and to disclose all material facts. During this critical period, the Captain received no specialist care despite suffering two heart attacks.

125.  Defendants Touleen and Ahmad, aware of Amani's actions, failed to intervene or ensure the Captain was receiving proper medical attention, further breaching their duties.

126.  But for the inactions and fraudulent conduct of Defendants Amani, Touleen, and Ahmad, the Captain may have had the chance to receive timely and appropriate care. The delay caused by the concealment of key information from 8:15 PM to 10:00 PM resulted in valuable time being lost while Feras sought to understand the Captain's situation.

127.  Had Plaintiff 1 (Feras) been informed sooner, he could have arranged for specialist care or ensured the Captain was moved to a facility where urgent treatment was available. As a direct result of the defendants' failure to act, the Captain's health deteriorated, and he ultimately died.

128.    It was foreseeable that the Captain's condition would worsen without proper medical intervention. The failure of  Defendants Amani, Touleen, and Ahmad to ensure that the Captain received timely specialist care directly contributed to his decline.

129.    Had Plaintiff 1 (Feras) been notified truthfully and promptly, he would have taken the necessary steps to secure the Captain's health, which could have prevented further deterioration and potentially saved his life.

130.    The Defendants' Touleen and Ahmad  inaction and concealment of material facts led to irreversible consequences for the Captain.

131.    Defendant 3 (Amani) , did notify her daughter Touleen, Ahmad, Nancy and her family in Jordan and only notified Feras when he became his critical no return stage . Defendant 3 (Amani) didn't notify the Plaintiff Samiha

132.    Plaintiffs only found out the full extent to the alleged civil conspiracy when the investigation was completed and confirmed by the Bangladesh Criminal Court releasing  the reports and evidence.

133.    The plaintiff thought it was a simple greed to expedite the inheritance, which later to be found out its a planned plot between all the defendants since the Captain fell at 5:00 Pm

**ATTACHMENT 3**

134.   **NEGLIGENCE & BREACH OF DUTIES (4)**

135.   **FRAUD (4)**

136.   **Fraudulent Concealment**

**D.  The Consent for Percutaneous coronary intervention (PCI)**

137.   On or around 10:30 PM on December 13, 2022, Defendants Amani, Touleen, and Ahmad, while located at Amani's residence in Naperville, Illinois, participated in a phone call with Plaintiff 1 (Feras). Despite knowing since **7:50 PM** that the Captain had been in the ICU and on a ventilator at a hospital in Bangladesh, the Defendants intentionally concealed these material facts from Feras.

138.   They failed to inform Feras that the Captain had been in the ICU for several hours, and no medical procedures had been conducted in that time.

139.   This concealment created a false sense of urgency and misled Feras into thinking that immediate intervention was necessary when, in fact, the delay in treatment had been significant and unexplained.

140.   Amani's feigned shock, distress, crying and pretending she didn't who's with him, as a deliberate tactic to manipulate Feras's emotions and prevent him from questioning the situation further or seeking more information. Emotional abuse or psychological manipulation to control or influence Plaintiff 1 (Feras)  actions

141.   Had Plaintiff 1 (Feras) known that his brother had been in the ICU for several hours with no procedures being done, he would have realized there was negligence or a delay in the hospital's care.

142.    This would have led him to question why the PCI was only being proposed after such a lengthy delay, and he would not have consented to the procedure without first understanding the reasons behind the delay and the competence of the doctors.

143.    The concealment of these critical facts left Plaintiff 1 (Feras) with no ability to properly assess the situation, leading him to make a rushed decision that he now feels guilty about, believing his consent sealed his brother's faith

144.    Due to the Defendants' fraudulent concealment, Plaintiff 1 (Feras) made an uninformed decision to consent to the PCI procedure under false pretenses. Had Plaintiff 1 (Feras) known about the delay in treatment, his brother's condition in the ICU, and the failure to administer any procedures, he would have questioned the hospital's negligence and sought alternatives before consenting to such an invasive procedure.

145.    The Defendants Amani, Ahmad and Touleen's concealment of critical facts directly caused Plaintiff 1 (Feras) significant emotional and financial damages. By withholding information that his brother had been in the ICU since 7:50 PM and was on a ventilator, Feras was misled into believing the PCI procedure was urgently needed, resulting in his rushed consent.

146.    Had Plaintiff 1 (Feras) known of the delay in treatment, he would have questioned the need for immediate PCI, sought a second opinion, or transferred his brother to another facility, potentially preventing the death.

147.    The Defendants Ahmad, Touleen and Amani's fraudulent  actions led to Feras's emotional distress, including overwhelming guilt, anxiety, and grief, as he now believes his consent contributed to his brother's passing.

148.    This concealment caused him to make decisions he would not have made had

he been fully informed, resulting in both financial and non-financial damages.

**ATTACHMENT 3**

**149.** <u>**NEGLIGENCE,  BREACH OF DUTIES (5)**</u>

**150.** <u>**FRAUD (5)**</u>

>           **E.  Post-Consent Fraudulent Concealment  (10:30 PM – 1:30 AM,**
>
>           **December 14, 2022, Naperville, IL Time)**

**151.**   At approximately 1:00 AM on December 14, 2022, Feras attempted to reach out

to Amani, but Ahmad answered the phone, informing Feras that he still had no

information about the Captain's condition. Feras then tried to contact the hospital

and the co-pilot, but received no answers.

**152.**   Feras called his brother's phone, only to be told that the doctor was unavailable

to speak. However, the Captain had already been declared dead at 12:00 AM, and

by this time, Amani, Ahmad, and Touleen had already been debriefed by the hospital

about the cause of death.

**153.**   They had made decisions regarding the Captain's burial and had even declined

an autopsy without consulting Feras or Samiha, his mother.

**154.**   At around 1:30 AM, Ahmad called Feras to inform him of the Captain's death but

failed to provide any context or explanation about the circumstances leading to it.

This left Feras and his family in shock and confusion. When Feras inquired, "How

did he die?" Ahmad merely responded, "We don't know." It was not until later that

Feras discovered through the hospital that his brother had suffered a heart attack

and that his body would be sent to Jordan.

**155.**    By withholding key details about the Captain's medical condition, including the

severity of the heart blockage and the lack of specialist intervention, the Defendants

obstructed Feras from fully understanding the events surrounding his brother's death.

**156.** This lack of transparency and communication caused significant emotional distress and hindered the family's ability to make informed decisions in the aftermath of the Captain's death

**ATTACHMENT 3**

**157.** <u>**NEGLIGENCE & BREACH OF DUTIES (6)**</u>

**158.** <u>**FRAUD (6)**</u>

**159.** <u>**Intentional Concealment**</u>

      **F. Concealment and false Representation of Hospital Records protecting a criminal Act  December 16 2022**

**160.** Defendant 4 (Nancy) on December 16, 2022: Defendant 4, Nancy, picked up the Captain's personal belongings from the airport Amman Jordan when the remains arrived by the employer Gulf Air.

**161.** This occurred after deceiving Plaintiff 1 (Feras) by claiming she would not go to the airport, thereby preventing Feras from being present when the Captain's belongings were retrieved.

**162.** The following critical items, which were withheld by the defendants from Plaintiff 1 (Feras) and other family members, were of significant importance and directly related to the investigation into the Captain's death and hospital care:

    A. The Death Summary stating the details of the Captain at the hospital.

    B. The Captain's Phone with all his financial apps, emails and passwords

    C. The Captain's Pilot bag, with bag of medications and inhaler

    D. The Captain's Wallet with his credit cards and debit cards

    E. The Captain's Passport and Green Card

    F. The Captain's watch & Hat

### G. The negligence by the hospital

**163.** The Captain was unfit to fly, suffering from a 99% blockage in his coronary arteries, which directly contributed to his death. This blockage was not detected, and the hospital's failure to diagnose or act on this condition constitutes negligence.

**164.** Defendant 4 (Nancy) informed Plaintiff 1 (Feras) that she had requested the Captain's medical records but had not yet received them, despite knowing that the records were critical to understanding the circumstances surrounding the Captain's death and any possible negligence

**165.** **Misrepresentation by Defendant 2 (Touleen):**

**166.** On December 17, 2022, Defendant 2 (Touleen) made specific misrepresentations to Plaintiff 1 (Feras) via text message, claiming that the hospital records had been reviewed by doctors and that no further investigation was necessary. These statements were material and critical to the Plaintiffs in deciding how to respond to the Captain's death.

**167.** Defendant 2 (Touleen) texted: "We had the medical records looked over. Please believe me when I tell you that my dad was 100% healthy," despite being aware that the Captain had 99% blockage in his arteries and a history of hypertension. These statements were false, as the Captain's true medical condition was significantly more serious than Defendant 2 (Touleen) led the Plaintiffs to believe.

**168.** Defendant 2 (Touleen) added, "Nothing went wrong, this happened out of nowhere, he had back-to-back heart attacks." These comments were also material misrepresentations, designed to obscure the truth and downplay any hospital negligence.

**169.** These misrepresentations were made to prevent Plaintiffs from seeking an independent review of the hospital records and to control the narrative surrounding her father's death, ensuring that Plaintiffs would not investigate further, thus protecting her own financial interests.

**170.** **Delaying the Release of Hospital Records:**

**171.** Defendant 2 also stated that they don't want to release the records till after they go to Bahrain, meet with the employer, and get paid. This intentional delay in providing the medical records is a clear effort to suppress crucial information. It was designed to ensure that no external scrutiny or investigation into the Captain's death would take place until after the financial arrangements had been made, further preventing an investigation into potential negligence or misconduct.

**172.** By holding onto the records, Defendant 2 ensured that the Plaintiffs remained in the dark and could not pursue any meaningful action to investigate the circumstances surrounding the Captain's death.

**173.** **Defendant 3 (Amani)'s Misrepresentations:**

**174.** On December 17, 2022, Defendant 3 (Amani) told the Plaintiffs, "My husband was 100% healthy, the hospital did their best," despite knowing full well that the Captain had a history of cardiac issues and that the death summary contained clear indicators of medical negligence by the hospital.

**175.** This was a further attempt to conceal the truth and prevent the Plaintiffs from investigating the hospital's role in his death.

**176.** These statements, in conjunction with Defendant 2's misrepresentations, form part of a broader pattern of concealment by the Defendants, which was designed to

prevent the Plaintiffs from uncovering the true cause of death and the hospital's negligence.

**177.   Defendant 4 (Nancy)'s Reassurances**

**178.**   At the funeral, Defendant 4 (Nancy) and her father assured everyone that the deceased Captain had received "the best care" from both the hospital and the airlines, further pushing the narrative of no wrongdoing. This false assurance was meant to solidify the misleading story and deter further questioning from other family members and interested parties.

**179.**   By reassuring everyone that "nothing went wrong," Defendant 4 sought to prevent others from questioning the events surrounding the Captain's death, concealing key facts and the truth about the hospital's failure to properly treat him.

**180.   Concealment to Protect Financial Interests**

**181.**   The Defendants intentionally concealed key facts surrounding the Captain's medical condition and the circumstances of his death with the intent to defraud the Plaintiffs. Specifically, the Defendants knew that any investigation or questioning into the Captain's medical history, hospital records, or the airline's actions would reveal that he had 99% arterial blockage, a critical condition that was undetected by the employer(Gulf Air) and ignored by the hospital.

**182.**   This information, if revealed, would have exposed serious medical negligence and   carelessness on the part of the hospital and airline. However, the Defendants suppressed this information to avoid exposing their role in concealing the Captain's health issues and potentially compromising their financial gain from the Captain's life insurance policy and death benefits.

**183.** Defendant 3 (Amani), all defendants, were aware of the Captain's prior cardiac issues and the hospital's failure to act properly, but chose to conceal this information. By doing so, Defendant 3 (Amani) sought to avoid the negative consequences of hospital negligence being discovered, which could jeopardize her and Defendant 2's (Touleen's) ability to collect insurance payouts.

**184.** Defendant 2 (Touleen) was aware that the hospital records and death summary would expose the true cause of death and hospital negligence. However, she intentionally withheld this information, knowing that any investigation would likely reveal the 99% blockage and other critical oversights during the Captain's medical care.

**185. Airline Gulf Air's Involvement and Timing:**

**186.** At the time of the Captain's death on December 14, 2022, Gulf Air, the airline employing the Captain, was actively seeking foreign airline permits to operate flights to

**187.** the United States. This was a highly sensitive time for the airline, as they were trying to secure these permits.

**188.** The undisclosed system failures within Gulf Air—one of which contributed to the Captain's death on December 14, 2022, and another which led to the death of a flight attendant from a heart attack during a flight on November 26, 2022—posed a risk to the airline's reputation and regulatory approval process.

**189.** The Defendants, fully aware of these failures, concealed the critical details of the Captain's medical condition and death to prevent any further scrutiny of the airline's negligence and to protect the airline's interests. If these facts came to light, it would likely harm Gulf Air's reputation and ability to obtain necessary permits, as well as disrupt the Defendants' financial objectives regarding insurance claims.

**190.  Financial Motive and Delay in Action:**

**191.**  The Defendants' intentional concealment of the medical records, the Captain's phone, and other personal effects was also aimed at preventing the Plaintiffs from discovering critical evidence that would support a claim of medical negligence. By delaying the release of these records, the Defendants ensured that the Plaintiffs would not be able to immediately challenge the hospital's care and pursue further legal action, thus protecting the financial interests of the Defendants in the insurance payouts.

**192.**  The delay in releasing hospital records was part of a broader fraudulent scheme to hinder the Plaintiffs' ability to seek justice and claim the inheritance owed to them, thereby ensuring that the Defendants could expedite their access to the Captain's financial assets without interference.

**193.**  Defendant 4 (Nancy) played a pivotal role in the fraudulent concealment of material facts to protect her sister(Defendant 2, Touleen) and ensure that no investigation would interfere with her financial interests. Nancy made specific efforts to conceal the Captain's belongings and withhold key documents, such as the hospital records, medical summary, and the Captain's phone.

**194.**  Defendant 4 (Nancy) actively contacted Gulf Air's CEO to prevent any interference from the Plaintiffs, showing her clear intent to stop any independent inquiry or review into the circumstances of the Captain's death.

**195.**  Defendant 4 (Nancy)'s actions were not merely passive; she was aware of the fraudulent misrepresentations made by Defendant 2 (Touleen), and in some instances, acted as an enabler of these lies. She worked to suppress any investigation into the

99% blockage, knowing that its discovery would implicate both the hospital and the airline, thereby jeopardizing financial interests, including life insurance payouts.

**196.** The Defendants knew that the truth about the Captain's death—the delayed emergency care, failure to detect critical health conditions, and undisclosed system failures by Gulf Air—would expose significant medical negligence, undermine the insurance claims, and bring unwanted scrutiny on their financial dealings. This was the basis of their coordinated fraudulent scheme to prevent the Plaintiffs from seeking the justice and compensation they were entitled to.

**197. Unawareness of Critical Facts**:

The plaintiffs were entirely unaware of the critical facts contained in the death summary and the circumstances surrounding the Captain's death. They did not know that the airline had been grossly negligent from the outset by permitting an unfit pilot to fly, nor that the Captain's wife had intentionally failed to provide his medical history, including crucial information regarding his heart condition. Most notably, the Captain did not receive care from a cardiologist specialist, a glaring medical oversight.

**198. Concealed Facts Were Material and Vital**:

These concealed facts were not just material but vital, and their timely disclosure would have directly influenced the plaintiffs' decisions and actions.

**199.** Had the plaintiffs known of the negligence and the Captain's underlying medical conditions, they would have demanded an autopsy, delayed the burial, and refused to allow the airline to take control of the body. They would have traveled to Bangladesh immediately to launch a formal investigation and file a complaint.

**200.** Had Plaintiff Feras known the defendants were concealing the phone and wallet—both crucial to his mother's inheritance—he would have insisted on retaining those items to preserve her rightful share.

**201.** Instead, The defendants continually provided false reassurances and misleading statements, consistently delaying the release of critical facts, further obstructing the plaintiffs' ability to seek justice.

**202.** This conduct was part of a deliberate and coordinated fraudulent scheme designed to expedite the defendants' access to the Captain's financial resources, while simultaneously evading any accountability for his tragic death.

**203.** The defendants had no legitimate reason for concealing these essential facts, other than to cover up their own negligence and deny closure to the plaintiffs, especially Samiha, in relation to her full inheritance rights.

**204.** The plaintiffs were unable to obtain the necessary hospital records from the employer or the hospital itself due to the hospital's unreasonable demand for a physical presence to release the records. This forced the plaintiffs to incur significant costs, hiring an investigation company and sending a representative to Bangladesh to uncover the truth.

**205.** Despite repeatedly requesting the records—at least five times—the defendants refused to release the hospital records, falsely claiming nothing went wrong, and only agreeing to release them once they received payment from the employer.

**206.** Defendants were told that these records are needed for investigations. This pattern of concealment and delay underscores the defendants' ongoing efforts to

manipulate the situation for their own gain, while actively obstructing the plaintiffs' ability to seek justice and hold them accountable.

207.    The plaintiffs suffered substantial financial harm due to the intentional concealment of critical hospital records, the Captain's phone, and wallet. This concealment forced the plaintiffs to incur hundreds of thousands of dollars in legal and investigative costs, as they desperately sought answers about the Captain's death.

208.    Defendant 2 (Touleen) and Defendant 4 (Nancy) deliberately fostered chaos within the family to divert attention from their actions, isolating anyone who began to question or challenge their behavior. This manipulation created emotional distress for the plaintiffs, intensifying their grief and frustration.

209.    Defendant 2 (Touleen) attempted to manipulate Plaintiff 2 (Samiha) by requesting power of attorney to handle the legal process with the employer. Samiha, sensing the defendants' hidden motives, refused, which further heightened the plaintiffs' suspicions about the defendants' true intentions and willingness to protect their interests.

210.    Despite repeated requests, the defendants continued to lie about their possession of the hospital records, the phone, and the Captain's medical bag. Defendant 4 (Nancy) and Defendant 2 (Touleen) falsely assured Plaintiff Feras that they did not have the records but were simply waiting for the employer to provide them, despite knowing full well that they had possession of these critical materials.

211.    Despite Plaintiffs' repeated attempts to obtain information, including emails to the employer, the employer sided with the defendants' team, which actively sought to prevent any investigation. This choice further hindered the plaintiffs' ability to hold anyone accountable and investigate the truth behind the Captain's death.

**212.** The hospital report reveals several troubling inconsistencies that suggest delayed emergency care and potential negligence.

**213.** These include the Captain's collapse occurring at 4:00-4:30 AM, but his hospital admission being recorded at 5:30 AM, and an ECG performed at 4:42 AM, despite his admission happening later. The one-hour gap between his admission and subsequent cardiac arrest, along with no documented critical interventions, suggests severe mismanagement of care.

**214.** Despite a 99% arterial blockage, the PCI procedure was inexplicably delayed by nearly six hours, and there is no clear record of critical care between 7:00-9:00 AM, with an ECG reported after his time of death. Alarmingly, no cardiologist is named in the report, pointing to glaring negligence in care

**215.** When the plaintiffs' attempts to obtain answers from both the employer and the hospital failed, they were forced to pursue criminal charges against the hospital. Despite the defendants' legal obligation to disclose material facts, they intentionally withheld critical information, engaging in fraudulent conduct to conceal their negligence.

**216.** This deliberate concealment of material facts, including false representations, compounded the plaintiffs' harm and delayed their pursuit of justice.

**217.** The defendants despite their active duty to disclose information that was intentionally withheld and  actively concealed through false representations and withholding of material facts.

**ATTACHMENT 3**

**218.** <u>**INHERITANCE**</u>

**219.** <u>**NEGLIGENCE & BREACH OF DUTIES (7)**</u>

**220.** <u>**FRAUD (6) Fraudulent Transfer**</u>

### G. Delay of Issuance of Death Certificate

**221.** Defendants 4 (Amani), Defendant 2 (Touleen), and Defendant 5 (Nancy) deliberately delayed issuing the Jordanian death certificate until December 27, 2022, with the clear intent to deceive financial institutions and the rightful heirs about the deceased's death.

**222.** The delay allowed the Defendants to fraudulently withdraw funds from the deceased's account, circumventing legal safeguards, including a mandatory hold on accounts pending probate.

**223.** By manipulating this delay, Defendants ensured that the Plaintiff Samiha's inheritance would be deprived of these funds, which would have been blocked by the bank if the death certificate had been issued in a timely manner

**224.** By delaying the death certificate, Defendants intentionally obstructed Samiha's ability to inherit the deceased's assets, depriving her of her rightful share of the estate and causing financial harm by facilitating unauthorized access to funds that should have been shared with all beneficiaries and heirs

**225.** This delay resulted in unauthorized transfers from the deceased's account to the Defendants' benefit, without Plaintiff 2 Samiha's knowledge or consent, and was intended to prevent the rightful heirs from claiming the fund

**226.** Had the death certificate been issued in a timely manner, these withdrawals would have been blocked by banking institutions, safeguarding Plaintiff Samiha's rightful inheritance

**227. Unauthorized Withdrawals in Jordan:**

**228.** On December 22, 2022, Defendant 4 (Amani) used the deceased's ATM card, which had been taken from his wallet, to make unauthorized withdrawals totaling JD 1,354.909 (approximately $2,000) from Union Bank in Amman, Jordan.

**229.** These withdrawals were in direct violation of Jordanian banking laws that mandate the presentation of a death certificate before funds can be accessed.

**230.** The Defendants knew these withdrawals would violate the law and circumvent probate protections, thereby depriving Plaintiff Samiha of her rightful inheritance.

**231.** The withdrawals were made with the clear intent to defraud and misappropriate inheritance funds for personal use.

**232.** These withdrawals represent fraudulent transfers of inheritance funds, made without the knowledge or consent of Plaintiff 2 Samiha, thereby depleting the estate before she had a chance to claim her inheritance

**233.** Bank records confirm the following unauthorized withdrawals:

      A.  JD 1,000 (approximately $1.40)

      B.  JD 1,000.000 (approximately $1,400)

      C.  JD 355.000 (approximately $500)

**234.** These withdrawals were in direct violation of Jordanian banking laws, which require the presentation of a death certificate before accessing or withdrawing funds from an account belonging to a deceased individual.

**235.** By depleting the account before the death certificate was issued, Defendants effectively blocked Plaintiff Samiha from accessing the funds she was entitled to as the deceased's lawful heir.

**236.** It's alleged that Defendant 4 ( Amani ) Used the estates money to purchase tickets for herself, for Defendant 2 ( Touleen) and Defendant 1 ( Ahmad ) on December 14 2022

**237.** On information and belief, Defendants 4 (Amani) transferred funds from the deceased's Bahrain Bank account, including his final 2022 monthly salary of approximately $14,000, to her personal account in Illinois and Jordan.

**238.** By transferring funds to their personal accounts, Defendant Amani and the other Defendants intentionally interfered with Plaintiff Samiha's inheritance rights, depriving her of her rightful share of the deceased's estate.

**239.** These transfers were unauthorized, concealed from Plaintiff Samiha, and part of a pattern of financial fraud intended to deprive her of her rightful inheritance.

**240.** Discovery will confirm the details of these transactions, which were executed with fraudulent intent to misappropriate the deceased's assets.

**241.** Defendants withheld critical financial documents, including the deceased's bank statements, retirement documents, and records of outstanding debts, which were necessary for Plaintiff Samiha to file the probate petition and manage the estate.

**242.** By deliberately withholding these documents, Defendants obstructed the estate administration process, preventing the proper transfer of assets and enabling the fraudulent depletion of estate funds

**243.**  By concealing these documents, Defendants prevented Samiha from meeting the legal requirements to manage the estate and claim her inheritance.

**244.**  These actions were part of a broader scheme to delay the legal proceedings and prevent Plaintiff Samiha from securing the estate's assets, which were being misappropriated by the Defendants in fraudulent transfers.

**245.**  The withheld credit cards and phone were needed to contact the deceased's creditors and secure the estate's assets, preventing Samiha from fulfilling her obligations and protecting the inheritance.)

**246.**  Defendants 3 (Amani) , Defendant 2 (Touleen), and Defendant 4 ( Nancy) intentionally failed to notify financial institutions of the deceased's death and delayed issuing the death certificate, delaying the initiation of legal and financial processes.

**247.**  This delay was a tactic to obstruct inheritance claims and provide the Defendants with an opportunity to deplete the deceased's accounts before triggering banking restrictions.

**248.**  Defendants 4 (Amani) and 2 (Touleen) were aware of facts indicating negligence by the employer and hospital in relation to the deceased's care.

**249.**  Defendants deliberately concealed this information to delay any inquiries, giving them the opportunity to access the inheritance and financial resources before they could be scrutinized.

**250.**  By misrepresenting facts and concealing critical information, Defendants 4 (Amani) and 2 (Touleen) gained unauthorized access to the deceased's accounts and assets.

**251.** This resulted in the deprivation of Plaintiff Samiha and Plaintiff Feras's inheritance rights and their ability to claim the rightful financial resources.

**252.** Defendants 4 (Amani) and 2 (Touleen) fostered division within the family with fraudulent intent, deliberately suppressing inquiries into their misconduct and distracting from their concealment of financial activities.

**253.** These actions effectively disrupted the Plaintiffs' ability to investigate the Defendants' actions and prevented them from protecting the deceased's estate, causing significant harm to their inheritance rights

**254.** As a direct result of the Defendants' fraudulent actions, Plaintiff Samiha was deprived approximately Sixth of JD 1,354.909 ($2,000) from the deceased's Jordanian retirement salary and alleged $14,000 from his Bahrain salary in December 2022.

**255.** These unauthorized transfers were made without consent, violating Plaintiff Samiha's inheritance rights and causing significant financial harm

**256.** In December 2022, Defendant 2 (Touleen), accompanied by Defendant 4 (Amani), attempted to manipulate Plaintiff Samiha into granting Power of Attorney by falsely representing that they were assisting with her inheritance matters. When Plaintiff Samiha refused, Defendant 2 ( Touleen) retaliated by cutting off all communication, a deliberate tactic designed to isolate her and obstruct her ability to claim her inheritance.

**257.** This act was part of a broader effort to deprive Samiha of her rightful inheritance by manipulating her into forfeiting control of the estate

**258.    Defendant 3 Amani Defendant 2 Touleen and Defendant 4 Nancy In Bahrain**

**259.**    In January 2023, Defendant 4 (Amani) and Defendant 2 (Touleen) traveled to

Bahrain with the intent to fraudulently interfere with Plaintiff Samiha's inheritance.

**260.**    Defendant 4 (Amani) intentionally failed to return sentimental items, including the

deceased's uniform, knowing that their withholding would cause emotional distress to

Plaintiff Samiha, furthering their fraudulent scheme to deprive her of both inheritance

and emotional closure

**261.**    When Plaintiff Samiha tried to reach out to the employer to check her inheritance,

Defendant 3 (Amani) notified the employer that she allegedly received power of attorney

from Plaintiff Samiha and that Plaintiff Samiha doesn't want her inheritance .

**262.**    The Airline stopped responding to the Plaintiffs and Defendant ( Amani)'s son

confirmed. " Why are you calling Gulf Air, they will not give you Sh*t" "

**263.**    The Defendant 1,2,3 and 4 lied to Samiha's grandson who wanted to file a

wrongful death claim against the airlines, creating conflict between him and the Plaintiffs

to prevent him from filing any claim.

**264.**    The Plaintiffs, Samiha and Feras, were not only deprived of their rightful

inheritance but also harmed by the Defendants' manipulation of the Captain's son, who

had been living with them and shared a special, close relationship with the Plaintiffs.

**265.**    The Defendants intentionally deceived the Captain's son, causing him to turn

against the Plaintiffs and create unnecessary family conflict.

**266.**     This manipulation not only caused emotional distress but also disrupted the

Plaintiffs' ability to manage the estate, further compounding the harm they suffered.

**267.**    On January 29, 2023, Defendants 4 (Amani) and 2 (Touleen) filed a fraudulent lawsuit in Bahrain seeking to exclude Plaintiff Samiha from the inheritance. They deliberately served court papers to the deceased's apartment in Bahrain, which was inaccessible to Plaintiff Samiha due to her location in Jordan and physical limitations.

**268.**    The Defendants held the only copy of the keys, ensuring that Plaintiff Samiha could not access the apartment or respond to the lawsuit, thus obstructing her ability to protect her inheritance rights.

**269.**     This lawsuit was filed with the intent to deprive Plaintiff Samiha of her inheritance by fraudulent means. Not only was the lawsuit filed without proper legal grounds, but the service of process was executed in such a way as to prevent Samiha from responding, knowing that she was physically and geographically unable to access the apartment or contest the lawsuit.

**270.**    The Defendants' actions obstructed Samiha's inheritance claim and caused additional legal costs and delays. The Defendants thought Plaintiffs will not find out as none of them can travel to Bahrain.

**271.**    The apartment of the deceased contained critical belongings, including financial, medical records, and the employment contract of the deceased, all of which Defendants 4 (Amani) and 2 (Touleen) seized.

**272.**    By doing so, the Defendants obstructed Plaintiff Samiha's ability to claim her legal share of the inheritance, including selling items that Plaintiff Samiha had a rightful claim to, thus intentionally depriving her of her inheritance rights

**273.** Defendant 3 (Amani) and Defendant 4( Nancy) received a legal letter to refrain from interfering in Samiha Inheritance and return the items they seized for the inheritance to be addressed fairly.

**274.** Plaintiff Samiha filed a criminal complaint in response to the fraudulent actions of Defendants 4 (Amani) and 2 (Touleen).

**275.** However, this complaint was shut down due to the family influence exerted by Defendant 4 (Nancy) and Defendant 3 (Amani) within local government structures, preventing any legal recourse and further enabling the Defendants' fraudulent scheme

**276.** As a direct result of the Defendants' fraudulent actions, Plaintiffs incurred over $75,000 in legal fees to defend their rights in the inheritance case and contest the improper service of court documents, which were deliberately designed to prevent them from protecting their rightful inheritance

**277.** But for the Defendants' fraudulent acts, including their interference in the inheritance process and deliberate concealment of critical information (such as the Captain's death and financial assets), Plaintiffs would not have incurred substantial legal and investigative fees.

**278.** These financial losses were directly caused by the Defendants' actions, forcing the Plaintiffs to pursue legal avenues to uncover the truth and assert their inheritance rights.

**279.** But for the Defendants' deliberate misrepresentations and withholding of critical information, such as the Captain's cause of death, financial assets, and the misrepresented death certificate, Plaintiffs would not have suffered significant financial harm, including the depletion of the Captain's accounts and loss of inheritance.

**280.**    These fraudulent actions caused profound emotional distress, as Plaintiffs were unable to act on the Captain's wishes, faced uncertainty about their rights, and experienced a sense of betrayal. The prolonged distress exacerbated the Plaintiffs' financial challenges and severely impacted their emotional well-being.

**281.**    Plaintiffs assert that any transfers of funds from the Captain's estate into U.S. accounts were made with intent to defraud rightful heirs and request that these transfers be reversed.

**282.**    But for the Defendants' fraudulent omissions and intentional misconduct, Plaintiffs would not have suffered the emotional distress and financial harm resulting from the delayed care (e.g., failure to inform of the cause of death or medical history) and the mishandling of the deceased's estate (e.g., unauthorized withdrawals, failure to notify about assets, and concealment of key financial documents). These actions directly caused ongoing distress and financial challenges for the Plaintiffs.

**283.**    Plaintiff Samiha would have received her full, rightful inheritance, which was deliberately depleted by the Defendants' concealment of financial records and unauthorized access to funds. As a result, Plaintiff Feras was burdened with covering his brother's share of the estate, as the inheritance that Samiha received was significantly reduced due to legal and investigative expenses caused by the Defendants' interference

**284.    Defendants' Obstruction of Investigation**

**285.**    Beginning with the Captain's death in December 2022, Defendants Amani, Touleen, Ahmad, and Nancy intentionally obstructed the investigation into the true

cause of death and interfered with Plaintiffs' ability to manage the Captain's estate and pursue rightful claims, including insurance benefits. Specifically

**286.  Denial of Autopsy & Burial Interference**

**287.**  The Defendants intentionally obstructed the investigation by denying the requested autopsy and authorizing the immediate transfer of the Captain's remains to Jordan, thus preventing the Plaintiffs from investigating the true cause of death. This action was taken with the knowledge that the family had serious concerns about the circumstances surrounding his death, especially given the Captain's medical history.

**288.  Theft and Concealment of Hospital Records**

**289.**  On December 14, 2022, Gulf Air unlawfully took possession of critical hospital records—such as PCI CDs, chest X-rays, diagnostic summaries, and death certificates—without authorization from United Hospital. Despite repeated legal requests from the Plaintiffs beginning December 17, 2022, and five separate court orders issued between May and September 2023, Gulf Air refused to return or disclose these records These records were vital to understanding the Captain's medical condition and determining whether medical negligence played a role in his death.

**290.  Intentional Withholding of Critical Evidence**

**291.**  Gulf Air, under the direction of Defendants Amani, Touleen and Nancy intentionally withheld critical evidence that could have shed light on the Captain's health issues and whether his death was preventable. The Plaintiffs were systematically denied access to these records, further obstructing their ability to investigate the cause of death and pursuit of insurance claims

**292. Public Statements and Fraudulent Claims**

**293.** On March 6 2023, Defendant 2 (Touleen) made public statements falsely claiming to have knowledge of the Captain's cause of death, discouraging any further investigation. Despite being fully aware of the Captain's underlying medical issues,

**294.** Defendants Amani, Touleen and Nancy deliberately obstructed the investigation by falsely asserting that the Captain's death was not due to negligence, thus ensuring that Gulf Air and others would be absolved of any liability.

**295.** The fraudulent narrative served to hinder any potential life insurance claims and prevent the discovery of negligence that might have implicated Gulf Air or the employer.

**296. Intentional Infliction of Emotional Distress (IIED)**

**297.** Defendants' actions were not only unlawful but also deliberate and intentionally inflicted severe emotional distress on the Plaintiffs. By obstructing the investigation and withholding vital information, Defendants engaged in conduct that was outrageous, extreme, and beyond the bounds of decency, causing the following emotional distress to the Plaintiffs

**298.** Plaintiffs are shocked with how the Defendants treated them and feel betrayed by Defendant 2 (Touleen) how she didn't mind letting the killer of her dad walk away only to secure money quicker. Plaintiff Sevem emotional damages caused by the outrageous acts they have done to her sister who lives with her that added to her already trauma, now Sevem is living in fear of losing her sister because of the Defendants Acts. Plaintiff Samiha's losses are indescribable of how they chose money over their grandmother and how all Defendants made her grandson not come to his dad's burial and to see his grandmother, Defendants played indecent humane acts with Plaintiff Samiha . Samiha

now has to leave her son's grave in Jordan all alone to travel back to the USA while the Defendants could have buried him in the USA where everyone can visit him.

**299.    Emotional Harm from Obstruction of Investigation**

**300.**    Defendants' refusal to provide hospital records, coupled with their fraudulent actions to block an accurate investigation into the Captain's cause of death, caused Plaintiffs significant emotional pain.

**301.**    The uncertainty surrounding the true cause of death, along with the fear that negligence may have been involved, caused Plaintiffs to suffer profound distress and anxiety. The delay in obtaining critical medical information caused them to feel betrayed and helpless, as they were unable to honor the Captain's memory and pursue insurance claims to which they were legally entitled.

**302.    Distress from Family Manipulation and Deception**

The Defendants manipulated the Captain's son to create division and confusion within the family, making him turn against the Plaintiffs. This manipulation disrupted the Plaintiffs' ability to manage the estate and caused emotional turmoil, as they had a close, familial bond with the Captain's son.

**303.**    The deceitful tactics employed by the Defendants exacerbated their grief, as they now had to deal with family conflict in addition to the wrongful actions of the Defendants.

**304.**    The Defendants' obstruction prevented the Plaintiffs from resolving the legal matters surrounding the Captain's estate, forcing them to engage in prolonged and costly legal battles. The added financial strain and uncertainty over their inheritance rights caused substantial emotional harm to the Plaintiffs.

**305.    Severe Impact on Plaintiffs' Financial and Emotional Well-Being**

Plaintiffs Samiha and Feras were also forced to incur substantial legal fees, totaling over $75,000 in order to contest the fraudulent actions of the Defendants and assert their rights to the estate. The emotional toll of dealing with these legal challenges, combined with the financial burden, contributed to the Plaintiffs' heightened distress.

**306.**    The prolonged nature of this distress, coupled with the loss of their loved one by negligence, further exacerbated their suffering, resulting in long-term emotional and financial harm, and hindered their legal rights to the Captain's estate, including insurance claims and inheritance.

**ATTACHMENT 4**

**307.** **Fraud Claims**

**308.** **Claim 1**: **Fraudulent Misrepresentation** of Medical History

**309.** Plaintiffs (All) vs. Defendants (Amani)

**310.** Amani misrepresented and withheld critical details about the Captain's medical history when contacted by the hospital and Plaintiffs. Amani was aware of the Captain's medical conditions, yet knowingly misrepresented or omitted this information. Amani intended to mislead the airline and hospital to prevent the Captain from being suspended or medically grounded, prioritizing financial interests over his health and safety. The hospital relied on Amani's false representations Plaintiffs also relied on these misrepresentations when assessing the situation.

**311.** The false representations caused a delay in necessary medical interventions, contributing to the deterioration of the Captain's health and ultimately his death. Plaintiffs suffered emotional and financial harm as a result

**ATTACHMENT 4**

**312.** **Fraud Claims**

**313.** **Claim 2**: **Fraudulent Misrepresentation** of Location and medical critical status of the Captain Mohannad

**314.** Plaintiffs (ALL) vs. Defendants (Amani and Ahmad )

**315.** Amani falsely claimed the Captain was in Lahore, Pakistan, and withheld information about his critical condition and ICU status.

**316.** Ahmad, aware of the falsity, remained silent, enabling the misrepresentation.

**317.** Amani misled Plaintiffs to control the narrative and prevent interference, while Ahmad's silence enabled the deception.

**318.** Plaintiffs reasonably relied on Defendants causing delays in their ability to act.

**319.** The misrepresentation and silence delayed timely intervention, exacerbating the Captain's condition and contributing to his death.

**ATTACHMENT 4**

**320.** **Claim 3**: **Fraudulent Concealment** ( Concealment of location and status .

**321.** Concealment of knowledge during PCI consent )

**322.** Plaintiffs (All) vs. Defendants (Amani, Ahmad)

**323.** Amani and Ahmad deliberately concealed the Captain's true location (Dhaka, Bangladesh) and his critical condition (ICU, on ventilator support). They also failed to disclose key information during the consent process for the PCI procedure, including the Captain's lack of specialist care and multiple prior heart attacks. Amani and Ahmad were fully aware of the Captain's location, ICU status, deteriorating condition, and the absence of specialists to handle his case, but intentionally withheld this information.

**324.** Amani and Ahmad concealed this information to mislead Plaintiffs into consenting to the procedure and delaying actions that could have provided intervention or accountability.

**325.** Plaintiffs reasonably relied on the representations and omissions made by Amani and Ahmad, believing they were being provided accurate and complete information.

**326.** The concealment delayed timely medical interventions, denied Plaintiffs the opportunity to advocate for better care, and contributed to the Captain's death.

**327.** **ATTACHMENT 4**

**328.** **Claim 4**: **Civil Conspiracy**

**329.** Plaintiffs (All) vs. Defendants (All)

**330.** Collusion to conceal facts, hospital records, death certificate, delay inheritance, and obstruct justice.

**331.** Defendants Amani and Ahmad agreed to conceal critical facts about the Captain's location, medical condition, and the circumstances surrounding his death to delay inheritance and obstruct justice.

**332.** Defendants intentionally colluded to withhold information, misrepresent material facts, and delay legal proceedings to serve their personal interests.

**333.** Defendants concealed the Captain's ICU status, location, and critical condition, delayed providing hospital records, and misrepresented the Captain's health and care to mislead Plaintiffs.

**334.** Plaintiffs suffered emotional trauma, financial losses, and delays in obtaining their rightful inheritance and pursuing justice due to the Defendants' actions.

**ATTACHMENT 4**

335. **Claim 5**: **Intentional Concealment**

336. Plaintiffs (All) vs. Defendants (All)

337. **Defendant 2: Touleen Alhindi**

    A. Concealed material facts:Withheld the Death Summary detailing the Captain's hospital stay

    B. As the Captain's daughter and a beneficiary, had a duty to disclose accurate information about his health and death to other family members

    C. Deliberately misrepresented the Captain's health status via text message on December 17, 2022

    D. Intentionally misrepresented her dad's death March 2023, obstructed and investigation and shielded criminals

    E. Plaintiffs relied on Touleen's false statements and were unable to take appropriate legal action

    F. Plaintiffs were prevented from pursuing timely medical negligence claims against hospital or airlines

    G. Publicly false represented the death of her father

    H. Contacted the Hospital into not releasing CCTV and medical records to plaintiffs and their representative

    I. Created distribution between family members

    J. Tried to deceive her grandmother with Power of Attorney

    K. Endangered the public

**311.  Defendant 2: Amani Alhindi**

A.  Withheld the Captain's personal belongings containing crucial financial information

B.  As the Captain's wife, had a fiduciary duty to disclose accurate information about his health and assets

C.  Falsely stated on December 17, 2022, "My husband was 100% healthy, the hospital did their best". Confirmed that there was no negligence multiple times up until she arrived in Bahrain.

D.  Plaintiffs trusted Amani's statements and were unaware of the true circumstances

E.  Amani made decisions on behalf of the family in burial, inheritance and medical treatment.

F.  Amani colluded with the Airlines by misrepresenting the Plaintiffs and claiming she has power of attorney from Plaintiff Samiha

G.  Amani used the Estate money and concealed the Will, insurance policies and investments including Stocks the belonged to the Captain

H.  Plaintiffs were unable to contest unauthorized financial transactions

I.  Plaintiffs are aware Amani transferred the money into her USA accounts.

J.  Endangered the public

**312.  Defendant 3: Nancy Alhindi**

A.  Picked up and withheld the Captain's personal belongings from the airport

B.  Duty to disclose:As a family member involved in handling the Captain's affairs, had a duty to share relevant information

C. Deceived Plaintiff 1 (Feras) by claiming she would not go to the airport

D. Colluded and made a deal with the employer CEO to interfere in Plaintiff Samiha inheritance and investigation

E. Nancy helped the Defendants conceal the airline and hospital negligence.

F. Nancy held the Captain wallet, phone and helped sell his stuff in Bahrain and Jordan without approval of Plaintiff Samiha

G. Nancy caused distraction in the family and leveraged government influence to fraudulently interfere in Plaintiffs investigation and Samiha inheritance

H. Plaintiffs were misled about the availability and content of crucial documents

I. Plaintiffs were unable to access critical information needed for legal and inheritance proceedings and were deceived by her false statements

J. Endangered the public

**313.   Defendant 4: Ahmad Alhindi**

A. Participated in withholding information about the Captain's true health condition

B. As a family member involved in the Captain's affairs, had a duty to provide accurate information

C. Collaborated with other defendants to suppress information about medical negligence

D. Plaintiffs were unaware of Ahmad's role in concealing critical information

E. Plaintiffs were hindered in their ability to pursue legal action and claim their rightful inheritance

F. Helped shield criminals

G. Endangered the publc

**ATTACHMENT 4**

**314.** **Claim 6** : **Fraudulent Transfer**

**315.** Plaintiffs (All) vs. Defendant ( Amani )

**316.** The defendant  Amani Alhindi, engaged in fraudulent transfers of Captain Mohannad Alhindi's assets with the intent to deprive rightful heirs of their inheritance. Key elements of this fraudulent transfer include:

**317.** The defendant deliberately delayed issuing the Jordanian death certificate until December 27, 2022, intending to deceive financial institutions and circumvent legal safeguards that would have blocked access to the deceased's accounts pending probate. The withdrawals violated Jordanian and Bahrain banking laws requiring presentation of a death certificate before accessing a deceased person's funds.

**318.** The defendant withheld critical financial documents, including bank statements, retirement documents, and records of outstanding debts, which were necessary for proper estate administration and inheritance claims.

**319.** The defendant intentionally failed to notify financial institutions of the Captain's death, delaying the initiation of legal and financial processes to protect the estate's assets.

**320.** These actions were taken with the clear intent to defraud the rightful heirs, particularly Plaintiff Samiha Ayyash, of their inheritance. The defendants' conduct resulted in the depletion of estate assets before the plaintiffs had a chance to claim their rightful share. The fraudulent transfers caused significant financial harm to the plaintiffs and interfered with the proper administration of the deceased's estate

**ATTACHMENT 4**

**321.** **Claim 7** : **Negligence**

**322.** Plaintiffs (All) vs. Defendants (All)

**323.** **Defendant Amani Alhindi:**

**A.** Misrepresented the Captain's medical history to medical professionals, concealing critical information about his cardiac issues and medications.

**B.** Failed to disclose the Captain's true medical condition to the airline and family members, allowing him to continue flying despite being unfit.

**C.** Provided false information about the Captain's location and condition to Plaintiff Feras, delaying timely intervention.

**D.** Concealed the Captain's critical status and ICU admission from family members.

**E.** Withheld crucial medical information during the consent process for the PCI procedure.

**F.** Concealed the medical records and misrepresented the care he received

**G.** Delayed the issuance of the death certificate, enabling unauthorized access to the deceased's accounts.

**H.** Made unauthorized withdrawals from the deceased's bank accounts before the death certificate was issued.

**I.** Made unauthorized transfers and used the estates and the Captain's money after death before the estate is distributed

**J.** Failed to notify financial institutions of the Captain's death in a timely manner.

**K.** Filed a fraudulent lawsuit in Bahrain to exclude Plaintiff Samiha from the inheritance.

**L.** Withheld Captain's phone and critical financial documents necessary for proper estate administration.

**M.** Interfered with Plaintiff Samiha's inheritance rights

**N.** Obstructed the investigation into the true cause of the Captain's death.

**O.** Shielded criminal

**P.** Buried the Captain overseas to prevent autopsy and accountability

**Q.** Deprived the Plaintiffs relation with the Captain's son and Plaintiff Samiha from her son's memory and belongings

**R.** Colluded with the Employer

**S.** Endangered the Public

**324.** **Defendant Touleen Alhindi:**

A. Misrepresented the Captain's health status and circumstances of his death to the Plaintiffs and others.

B. Concealed hospital records and obstructed investigations into the Captain's death.

C. Made false public statements about the Captain's health and the circumstances of his death.

D. Attempted to manipulate Plaintiff Samiha into granting Power of Attorney under false pretenses.

E. Filed a fraudulent lawsuit in Bahrain to exclude Plaintiff Samiha from the inheritance.

F. Withheld critical belongings and documents from the deceased's apartment in Bahrain.

G. Obstructed the investigation by discouraging further inquiry into the cause of death.

H. Lied about her father's care during his hospital time

I. Participated in concealing the airline and hospital's negligence.

J. Created division within the family to divert attention from her actions.

K. Endangered the Public


**325. Defendant Nancy Alhindi:**

A. Withheld the Captain's personal effects, including his phone and wallet, impeding the Plaintiffs' ability to manage the estate.

B. Deceived Plaintiff Feras about going to the airport to collect the Captain's belongings.

C. Colluded with the airline's CEO to interfere with Plaintiff Samiha's inheritance and obstruct the investigation.

D. Participated in concealing the airline and hospital's negligence.

E. Assisted in selling the Captain's belongings in Bahrain and Jordan without Plaintiff Samiha's approval.

F. Leveraged government influence to fraudulently interfere with the Plaintiffs' investigation and Samiha's inheritance.

G. Made false assurances about the quality of care the Captain received, deterring further questioning.

H. Delayed the Death Certificate

I.   Leveraged her Governmental influence in interfering in Plaintiff's Samiha inheritance

**326.   Defendant Ahmad Alhindi:**

A.   Participated in concealing critical information about the Captain's health condition and location.

B.   Collaborated with other defendants to suppress information about medical negligence.

C.   Remained silent when aware of false information being provided to Plaintiff Feras about the Captain's condition and location.

D.   Participated in withholding information during the consent process for the PCI procedure.

E.   Assisted in shielding potential criminal acts related to the Captain's death and subsequent handling of his estate.

F.   Used Estates fund for Airlines tickets and travelling expenses.

G.   False represented himself to the Hospital

**ATTACHMENT 4**

**327.** **Claim 8** : **Breach Of Fiduciary Duty**

**328.** Plaintiffs (All) vs. Defendants (All)

**329.** The defendants Amani Alhindi, Touleen Alhindi, Nancy Alhindi, and Ahmad Alhindi breached their fiduciary duties to the plaintiffs through a series of deliberate acts of concealment, misrepresentation, and fraudulent conduct. As family members with intimate knowledge of Captain Mohannad Alhindi's medical history and financial affairs, they had a duty to act in the best interests of the estate and its rightful heirs.

**330.** They deliberately withheld critical medical information from healthcare providers, misrepresented the Captain's condition to family members, concealed his true location during a medical emergency, and obstructed access to vital financial documents and personal effects. These actions prevented timely medical intervention, hindered the plaintiffs' ability to make informed decisions about the Captain's care, and interfered with the proper administration of his estate.

**331.** The defendants' coordinated efforts to manipulate the inheritance process, conceal assets, and obstruct investigations into the circumstances of the Captain's death demonstrate a severe and intentional violation of their fiduciary responsibilities. As a direct result of these breaches, the plaintiffs suffered significant financial losses, including unauthorized withdrawals from the Captain's accounts, depletion of estate assets, and substantial legal and investigative costs.

**332.** The plaintiffs endured severe emotional distress due to the uncertainty surrounding the Captain's death, family conflicts instigated by the defendants, and the prolonged struggle to secure their rightful inheritance

**ATTACHMENT 4**

**333.** **Claim 8** : **Public Endangerment**

**334.** Plaintiffs (All) vs. Defendants (All)

**335.** **Knowledge of Pilot's Unfitness**

**336.** Defendants had knowledge of the Captain's medical conditions that made him unfit to fly. The medical conditions were significant enough to affect the pilot's ability to safely operate an aircraft. As family members and individuals involved in the pilot's affairs, defendants had a duty to report known medical issues. Defendants intentionally withheld information about the pilot's health from proper authorities.

**337.** The airline failed to adhere to FAA regulations regarding pilot fitness and incident reporting. The airline had a responsibility to ensure the safety of passengers and crew. By allowing an unfit pilot to fly, the airline breached its duty of care. The airline's negligence directly contributed to the unsafe operation of the aircraft. The negligence resulted in harm or potential harm to passengers and crew.

**338.** Conspiracy to Conceal Defendants collectively agreed to hide information about the pilot's unfitness and the circumstances of his death. The purpose of the agreement was to prevent authorities from discovering the truth and to protect financial interests.

**339.** Defendants took specific actions to conceal information, such as withholding medical records and making false statements. The conspiracy resulted in harm to the plaintiffs and potentially endangered public safety.

**340.** These elements demonstrate a coordinated effort to conceal critical information about a pilot's fitness to fly, airline negligence, and medical malpractice, in violation of legal and ethical obligations to report such issues to proper authorities

**ATTACHMENT 4**

**341.    Claim 12: IIED (Intentional Infliction of Emotional Distress**

**342.**    Plaintiffs (All) vs. Defendants (All)

**343.**    Severe emotional distress caused by deception, concealment, and manipulation

**344.**    The defendants' actions and deliberate deception, misrepresentation of facts, and concealment of critical medical information—are extreme and outrageous. Their actions were calculated to delay intervention and obstruct medical care, and obstruct investigation and inheritance showing reckless disregard for the Plaintiffs' emotional health and safety.

**345.**    The Plaintiffs suffered emotional distress as a result of the defendants' fraudulent misrepresentations, including stress, grief, and anxiety caused by the delayed medical care and the false belief that the Captain was in stable condition. The emotional toll was further exacerbated when the true nature of the Captain's medical condition and location became known.

**346.    Severe Emotional Distress**

The emotional distress suffered by the Plaintiffs must be severe. In this case, the Plaintiffs experienced profound emotional distress, including grief, anxiety, and distress over the Captain's deteriorating health, compounded by the deceitful actions of the defendants. The plaintiffs were misled about critical life-and-death information, resulting in significant emotional trauma that was not only prolonged but also caused by the deliberate conduct of the defendants.

**ATTACHMENT 5**

## IV. Relief

WHEREFORE, Plaintiffs Feras Hindi, Sevem Alhindi, and Samiha Ayyash

respectfully request that this Court:

1.  Award compensatory damages to Plaintiffs for the financial harm caused by
    Defendants' fraudulent actions, in an amount to be determined at trial, including
    but not limited to:

2.  a) Restitution to Plaintiff Samiha Ayyash for unauthorized withdrawals made by
    Defendant Amani Alhindi, estimated exact numbers to be determined at court

3.  b) Compensation to all Plaintiffs for legal and investigative costs incurred,
    estimated at $75,000 each Plaintiff, in defending their inheritance rights and
    contesting improper service of court documents

4.  c) Damages for the loss of inheritance, including the value of assets in the
    deceased's apartment in Bahrain and any other misappropriated estate assets.

5.  d) Financial Damages Sevem has encountered from the Family business that
    were paid for investigation and legal proceedings against Defendants

6.  Award punitive damages against all Defendants in an amount to be determined
    by the jury, to punish and deter the egregious fraudulent conduct alleged.

7.  Hold all Defendants jointly and severally liable for the full amount of economic
    damages awarded.

8. Order full disclosure of all financial transactions related to Captain Mohannad Alhindi's estate, including international transfers to accounts in Jordan, Bahrain, and the United States.

9. Recognize Plaintiff Samiha Ayyash's rights as an heir under Illinois intestacy laws and ensure all estate assets, including those transferred internationally, are properly accounted for within this jurisdiction.

10. Order a complete accounting of all estate assets, including those transferred or concealed by the Defendants.

11. Order Defendants to return the Captain's belongings such as family albums related to him and Plaintiffs and his uniform as he had many.

12. Toll the statute of limitations for any claims discovered during the discovery process.

13. Refer this matter to appropriate criminal authorities for investigation and potential prosecution of fraudulent conduct, if the Court deems it appropriate based on the evidence presented.

14. Grant any other relief the Court deems just and proper under the circumstances.

15. Plaintiffs demand a trial by jury on all issues so triable.

16. That the Court grant Plaintiffs, who are proceeding pro se, leave to amend this Complaint should any deficiencies be identified, in the interests of justice and to ensure that all valid claims are properly presented to the Court.

Dated : December 13, 2024

Feras Hindi

Pro Se

Sevem Alhendi

Pro Se

Samiha Ayyash

Pro Se